Good morning, Your Honors. May it please the Court, my name is Melissa Grant, and I am representing the appellant, Alfred Johnson. The plaintiff, appellant, and class members were employees during the drug testing process because Winco chose to enter an employment agreement by requiring them to accept a job offer that included the position, the location, and their hourly wage. They did not have to ask them to accept the agreement. They could have made a drug testing a part of the application process, not following the acceptance. Also, Winco chose to strictly control the drug testing process. When, where, how the mandatory drug testing test was to be taken, again, they did not have to do that. They could have turned to applicants and said, you must submit a drug test that's taken within two hours of submitting the application to show that you are not taking illegal drugs. They chose not to do that. Let me understand one thing. You seek to represent a class of the folks who passed the drug test. Correct. And your argument is that they were employees. Were the people, in your view, the people who flunked the drug test, were they also employees? The condition subsequent that we call it, Potter v. Patterson says forget subsequent versus precedent, that it's just a condition. And it's a condition that if it's not satisfied, and that's the condition of passing the drug test, that relieves Winco of performing their obligations under the contract. So if the candidate did not pass the drug test, Winco was relieved of the obligation to continue their employment. If they did pass the drug test, as a matter of fact, the results went straight to Winco, and Winco immediately gave them the hiring date. I mean, not the hiring date, the date that they begin their first shift of work. As a matter of fact, the CBA... I don't think you quite answered the question. Are you claiming that the people who failed the drug test were employees or not? I'm taken by your answer that you think not, but I'm not sure I want to make... Yes, they're not. Okay. They're not. And they were not a part of the class. They were not considered class members. They had to have passed the test. I understand that. But in principle, they are employees under your theory, aren't they? And then they're no longer employees if they flunk? Yes, that's correct. They were initially employees, but when they flunked the test, that relieved Winco of the obligation to continue their employment. But aren't they entitled to get paid while they were employees? No, we take the position that they flunked the test, and they don't. But if your honors feel they should have been paid during the test for the same reason we argued... I'm wondering whether your clients should be paid. Yes, I think they should. That would be my position. Yes. Now, whether or not the condition voided the contract or established that there was no contract, the various cases that address the workman's comp issue clearly state that a condition for a drug test, the future event of a drug test, or the commissioner's approval of a baseball contract was a condition subsequent that did not affect the formation of the contract. The fact that it's a worker's compensation test spoke to the issue of where the contract was formed, not was there a contract formed. The condition in all those cases was viewed as not affecting the formation of the contract. Then the courts went on to say the liberal approach of worker's comp to protect employees says that it was formed in California. So it's a red herring to say they're worker's comp cases. It's very similar to another case that I believe your honors addressed, Judge Thomas, I believe you wrote the opinion in this case, where you said that a worker's compensation bar of student-athletes spoke to the larger labor code as well. And similarly here, the fact that they were employees, according to a formed contract, speaks to the liberal policy of protecting the interests of employees under the labor code. It's the same, only in a reverse mirror way. The argument- I guess if that's correct, then if they had to do the drug test at home, they'd still be employees under your theory, and they'd still be entitled to compensation. We would say that yes, the employment contract was formed. Now whether or not that's ours worked would depend on whether or not the employer exercised sufficient control. And that's under California law, as was recognized in Ridgway, is if the employer directs, commands, and restrains the employee from using the time effectively for their own purposes. Now if the employer in this case, Winco, said to the employee, you can go to any location, you can do the test at any time, you can do it at home, just as long as it shows you are not intaking illegal drugs or you're not imbibed with alcohol, then arguably the employer is not directing, restraining, or commanding that employee. So that may not be ours worked under the wage orders. But they would have an employment contract. Do you- am I making the distinction clear? Okay. Winco's reference to the Loader v. Ross cases is also a red herring. In Loader v. and in Ross, the issue was whether or not an employer could require a new hire to take a drug test without violating the Confidential Medical Information Act, without violating the Compassionate Act, and without violating the Constitution in California. And it held it does not violate any of those three acts. Ironically, in Ross, the court recognized there was an employment agreement because there was an offer and acceptance and entertained the plaintiff's claim that they were terminated or wrongfully terminated in violation of public policy. The court held it was not in violation of public policy. You can not- you can consider in your hiring practices whether or not a candidate is using illegal drugs. So it had nothing to do with employment law. I think the Ross case said that point blank. It's not speaking to employment law. So it is truly a red herring to suggest, and I should have said I'd like to reserve five minutes for my rebuttal. My apologies for not saying that. Winco's argument boils down to, well, we say in all our internal documents it's a contingent job offer. But these are internal documents. This is not- these are not documents that the employees saw. The only time they see the word contingent in writing is in the email they receive after they accepted the job offer and the email that says we're going to the next steps which require you to take your drug testing test and your background check. The fact- as a matter of fact, the application itself read- let me tell you exactly what it read. We were- the application stated part of our employment pre-screening involves drug testing. We require your authorization and release to conduct this check. Will you consent to be screened for illegal drug use including marijuana? That's the supplemental excerpts of record 324. A later version said, will you consent to a pre-employment drug test to be screened for illegal drug use? That's at the supplemental excerpt of record 325. Now whether or not an employee or an individual who has just accepted an offer that includes the hourly wage, the location, and the position they're going to be hired would consider pre-employment to mean they're not hired or whether they would consider it before they start working is a question. But I would say that somebody who has that offer, is asked to accept it, would consider it before they get their first day of work. They wouldn't necessarily consider it. They wouldn't think I'm not hired yet. No. Why would you think you're not hired when you're told here's your position, here's what you're going to make, here's the location, but before we give you your first job assignment you've got to pass a drug test and you have to pass a background check. It's the same rules they apply to internal promotions. They have to do the same thing. But you don't get the promotion until you pass the test. So your status remains what it was. Yes. Yes, that is correct. That is correct. I see that my time has gotten to the point of rebuttal. I will wait until then. Thank you. Good morning, Your Honors. Karen Seldon on behalf of Winko. The Court should affirm because as a matter of pure contract law, Winko had no obligation to hire applicants until they passed the... Please keep your voice up. Sorry, Your Honor. Why don't you move your microphone down just a little if you can. That would be great. Thank you. Winko had no obligation to hire applicants until they satisfied the express drug testing contingency. So plaintiff's contract theory as well as their derivative control theory of employment both fail as a matter of law. Now I'll start with the contract theory because as their reply brief makes clear, their control theory also depends on the existence of a contract. So it's entirely derivative. Their theory is basically that offer plus acceptance always equals employment no matter what the substance of the offer is. And that's simply incorrect for at least three reasons. First, under black letter contract law, passing the drug test was an express condition precedent to any employment contract being formed. How do you answer the position taken by Ms. Grant that the contingent language of the offer was not made known to the employees before they took the test? I think the District Court was exactly right on this, Your Honor, when it found that there wasn't much more Winko could have done to make it clear to applicants that the drug test was being hired. The language in the employment application itself that Ms. Grant quoted is very telling. It says it is a pre-employment screening. This is the very first document that an applicant signs. So from the outset, they have noticed that it is a contingency. And then if you look at the talking points themselves, which are the standardized documents that are used to convey the contingent offers, it's... The application that says pre-employment condition? Yes, there's Supplemental Exerts 324 talks about an employment pre-screening, and 325 talks about pre-employment drug tests, because there were two versions of the application. Then the talking points are at Supplemental Exerts 335. And there again, it says that they're extending a contingent job offer, and it's contingent on the results of the pre-employment drug test. And then it goes on again to say that they will not be hireable, not be hireable, unless the tests are completed and successful. And then it goes on in the consent forms after the offer is extended. The drug testing consent form says as well that a refusal to test or a positive test will render me ineligible for employment. Same goes for the emails that schedule the drug tests. Again, those make clear as well that no successful drug tests, no employment contract. So I think there is literally nothing more I think Winko could have said to convey the contingency. And that being the case, under this Court's decision in Teamsters v. NASA, which we cite at page 22 of our brief, the Court explains that when an agreement has a contingent precedent, what you have is, quote, a proposed contract, not a contract, end quote. So until that contingency is satisfied, you don't have an employment agreement at all. But you don't even need to get tangled up so much into what happens at offer and acceptance. Because at most, even if there was some contractual obligation formed at that moment, at most it was Winko's promise to hire an applicant after they passed the drug test. So that is the extent of the contractual promise that was formed at that moment. So if somebody doesn't pass the drug test, they don't get hired. You end up with the same result. Just out of curiosity, does the record contain what people got when they flunked the drug test? They would get a call. It's in the drug testing procedure that's in the record. They would get a call from the vendor saying that you didn't pass, and they'd be given an opportunity to explain. And I think if the explanation was not adequate, then that would be the end of it. So I think, Judge Schroeder, your question to Ms. Grant was a good one, which is, under their theory, logically speaking, anybody who takes the drug test would be automatically an employee, even if they went on to flunk it. And what that would create is a situation where literally Winko and every other company would have to hire every applicant, give them all the hire paperwork, pay them for the time that they take the drug test, and then automatically then generate termination paperwork for everybody who didn't pass. And so that just creates a whole level of complexity and absurdity that's just not required by the law. And if anything, it goes against Loader and Raging Wire, which I really think are relevant and dispositive cases here. Those are the California Supreme Court cases that talk about drug testing being permissible only in a small window of time, post-offer, pre-hire. You can't do it pre-offer. That's illegal. And you can't do across-the-board testing post-employee either. That's illegal under the FEHA and ADA regs. So you only have this narrow window in which you can test non-employees. So if you buy plaintiff's theory that offer and acceptance automatically creates an employment relationship, you've closed that testing window entirely. It would not be possible in California to do any pre-hire drug testing if you were to accept plaintiff's theory. And you would be butting up against Loader and Raging Wire in creating a conflict. I also will just briefly address the workers' compensation cases that Ms. Grant mentioned. Those are completely irrelevant here. In fact, not only are they interpreting a labor code provision that specifically is about when employees are hired for workers' comp purposes, Bowen, which is the leading case, explicitly says it's not relying on traditional principles of contract law, that those don't apply. And in fact, it criticized the workers' comp appeals board for applying black-letter contract law because the policies are different in workers' comp. And so if anything, those cases suggest that had the courts applied traditional contract law principles, it would have come out the other way. So I don't think you can take any guidance from those cases. And more relevant are the uniform line of district court cases that have all gone the other way. Every single one agrees with Winko. How many are there? The district court cases?  There are, I believe, four or five, one of which Castro, incidentally, Ms. Grant is counsel of record in that case and was argued last month before a different panel of this court on the same issue. And I don't believe a decision has issued yet in that case. And then I will just say briefly on the control piece. Ms. Grant had suggested that something that companies could do instead is to tell employees, go take a drug test and come back with us with the results. And that doesn't work for a couple of reasons. One, employees, these applicants then would have to go and pay for their own tests. But there's a labor code provision that specifically prohibits companies from requiring applicants to pay for their own drug tests and other pre-employment medical exams. So you couldn't do that. It's just another way in which their proposal just blows up the entire drug testing scheme in California. And the second reason why that doesn't work is if they've been hired under their theory and they're already employees, then you're talking about this being an employment requirement, that you have to now go take a drug test. Me, as the employer, is telling you you have to do this. So that would become hours worked. So their proposed solution doesn't work here at all. And the one last thing I did want to point out is on their control theory as well. What they don't acknowledge at all, which we discuss in our briefing, is the DLSC's position on this. The state agency has taken the view with respect to typing tests and operating equipment and things like that that you would need to perform a job. That tryout time, according to the DLSC, is not compensable when that time is truly training as opposed to truly testing, I should say, rather than training. And the employer doesn't deprive any productivity from it. So if you apply those factors to drug testing, it's the same thing. It's purely a drug test. It's not training for the job. And Winko isn't deriving any productivity from this drug test. It's not forcing them to do work. So I think the DLSC would reach the same result with respect to drug testing. And I think it's notable that plaintiff's counsel, in their reply brief, did not even address or try and respond to the DLSC position on this because I don't think they do have a good answer. And finally, I would just briefly comment again on the big picture consequence of adopting plaintiff's position, which would be that any time anyone walks in the door for a job interview, any time somebody fills out an employment application, they would then have to be paid for that time. There is no case law that requires that. And we would urge the Court to maintain the current system that the California Supreme Court in Loader has said is not only lawful but useful. So unless the Court has any questions, I will submit. Thank you, Counsel. Thank you. Will you rebuttal? Thank you, Your Honors. There's a number of points I want to respond to. First of all, FIIA does not require acceptance of an offer. It says you must make a bona fide offer before you can require a new hire to go through a drug test. But it also says, and Winko, Counsel neglected to mention this, that after the drug test, post-offer, if they fail or are not qualified and they would not be qualified for the job, regardless of accommodation, whether they would cause a safety hazard to other employees with or without accommodation, you don't have to hire them. So FIIA gives them an out. There's no problem saying that they would suddenly be subject to all sorts of FIIA regulations. That's not correct. As to Bowen, Bowen said, the California Court of Appeals said, it's not relying on contract law to determine where the contract was made. That is the liberal policy of workers' compensation. But they did require on contract law to find a contract and to hold that the condition did not affect its formation. There is no question this is an issue of first impression. And district courts have ruled primarily on the facts in those given cases. And many of those cases did not have clear acceptance and there were exceptions to how the control test was applied. So I would not necessarily draw any conclusions from those cases. And I did represent one of those cases. Is the Castro case the same as this one? It's slightly different. There is not as clear an acceptance of it. But we did argue that it implicitly required acceptance and that the control was the same. It was even stronger in the sense that the employer was the only one that got the results of the drug test. That's it. The other thing I would say is a tryout test is very similar to the Taylor case that Winko cited. The Taylor case said that the bidder did not meet bidding requirements. So they weren't qualified. Whether their self-insurance method met the bidding requirements, they determined it didn't and therefore they weren't qualified for the job. The same would be the case with the tryout test. You try them out, can they run the piece of equipment they're applying to run? No, they're not qualified, not hired. It's not the same thing as a post-offer in acceptance drug test. The overarching thing that I want to point out is it is not going to open the floodgates of having to suddenly pay two or three hours per employee. That's all we're talking about. Because they suddenly have to take a drug test. No. As I said when I started, they could make it, like the Taylor case, a requirement of an application. And the fact that the labor code requires the employer to pay for it, fine. The employee has to go get the test. It has to meet certain requirements, but they can go wherever they want. They can do it in their time and submit a bill for how much it costs. I thought that the application specifically said that it was a pre-employment condition. It said it was a pre-employment screening process, which does not necessarily mean if you've gotten an offer, Your Honor, and the offer is I'm hiring you as a grocery clerk. Here's your location, the store you're going to be working in. I can't give you your first shift until you take a drug test. Isn't that pre-employment? Sure. Yes, but that's not pre-hire. You've already accepted the offer. You know, as a matter of fact, the CBA that applied to Alfred test, but it's before they're giving their first working shift. That's what the CBA described it as as well. It's not, it's a subjective version of what pre-employment means that Winko asserts. It's not necessarily the reasonable and rational interpretation of it, given the Are there any other questions? Thank you. Thank you, Your Honors. Thank you both for your arguments. The case just argued will be submitted for decision.
judges: SCHROEDER, THOMAS, BEA